**UNITED STATES of America,**

v.

**Joseph GERNIE, Defendant-Petitioner.**

United States District Court
S. D. New York.

April 8, 1964.

**330**

Schwartz, Troiano & Grant, New York City, for defendant-petitioner.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for United States, Andrew M. Lawler, Jr., Asst. U. S. Atty., of counsel.

FREDERICK van PELT BRYAN, District Judge.

This is an application for a writ of error coram nobis under the all-writs section of the Judicial Code, 28 U.S.C. § 1651(a). The application is directed to a conviction of petitioner Gernie for violation of probation before me on October 31, 1956, and his sentence on that conviction to a prison term of a year and a day. Petitioner completed service of the sentence on August 19, 1957. He asserts that his conviction for violation of probation and the sentence imposed on him therefor were illegal and void and should now be vacated and expunged from the record.

The rather complicated background is as follows:

In June of 1944 petitioner was convicted in this court on two counts of theft from interstate commerce in violation of former Section 409 of Title 18 (now 18 U.S.C. § 659) and certain customs offenses in violation of former Section 1598 of Title 19 (now 18 U.S.C. § 549). He was sentenced to 30 days on the theft count and a year and a day on the customs offenses count. Execution of the sentence on the customs offenses count was suspended, and he was placed on probation for one year, to commence after the service of the 30 day sentence on the other count. His probation commenced on July 22, 1944.

Shortly thereafter petitioner failed to report to the probation authorities as required. After he had received warnings against repeating these derelictions, he continued to fail to report and did not do so again during the course of the probationary period. He also moved from the place where he lived without informing the probation authorities contrary to probation instructions. For these reasons, on July 30, 1945, about a week after the expiration of the probation period, a bench warrant for his arrest for violation of probation was issued by this court on application of its probation authorities made July 6, 1945, some two weeks prior to the expiration of the probation period.

No efforts were made to serve this warrant or to locate petitioner and it remained static in the files of the Probation Department until October of 1956 when petitioner was arrested on a charge of violating the narcotics laws. A routine check of the files of the Probation Department, when it was notified of his arrest, disclosed the unexecuted warrant. The warrant was only then executed.

Petitioner, then on bail on the narcotics charge, was brought before me charged with violation of the probation during the period from July 22, 1944, to July 22, 1945.

On October 30, 1956 a hearing was held on the charge. Though petitioner was represented by competent counsel of his own choosing, no objections to jurisdiction were raised based on the staleness of the warrant or the long delay in serving it. The only issue presented was whether the petitioner had in fact violated his probation.

I found the defendant guilty of that charge, revoked his probation and sentenced him to serve the original sentence of a year and a day on the customs offenses count of his June 1944 conviction, which had been suspended by the sentencing court when he was placed on probation. No appeal was taken from that conviction. As has been indicated, petitioner served this sentence and was conditionally released on August 19, 1957.

In the meantime, on February 11, 1957, petitioner had been convicted before Judge Palmieri of this court on five counts of an indictment charging him with violating and conspiring to violate the narcotics laws (21 U.S.C. §§ 173, 174, 18 U.S.C. § 371) on which he had been arrested in October of 1956. He was sentenced by Judge Palmieri to a five year prison term on Counts 2 and 3 of that indictment and a ten year prison term on Counts 5, 6, and 7, the sentences to run concurrently but consecutive to the year and a day sentence which I had imposed for violation of probation. Though petitioner was then serving the violation of probation sentence, he signed an election not to commence service of his ten year narcotics term pending disposition of his appeal from the narcotics conviction and applied for transfer from the federal penitentiary at Leavenworth to the Federal House of Detention in New York. He was advised that such transfer would be made when he completed service of the year and a day violation of probation sentence.

When petitioner was conditionally released from his year and a day violation of probation sentence on August 19, 1957, to begin service of his ten year narcotics sentence, he signed a new election not to commence his narcotics sentence pending disposition of his appeal from that conviction. He was thereupon transferred to the Federal House of Detention in New York pending such disposition. Thus, petitioner was in the Federal House of Detention in New York, unable to make bail pending disposition of his narcotics appeal, from

August 20, 1957, until his conviction was affirmed on appeal, and certiorari was denied in May 1958. United States v. Gernie, 252 F.2d 664 (2 Cir. 1958), cert. den. 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed. 2d 1073. Only then did petitioner commence service of his ten year narcotics sentence, which he is still serving.

On June 27, 1960 petitioner moved before Judge Palmieri, pursuant to 28 U.S.C. § 2255, for an order vacating the narcotics judgment of conviction and the sentence imposed. Judge Palmieri denied that motion on July 15, 1960. His decision was affirmed by the Court of Appeals on February 16, 1961, 287 F.2d 637, and certiorari was denied, 368 U.S. 854, 82 S.Ct. 91, 7 L.Ed.2d 52 (1961).

On December 18, 1961, petitioner moved pursuant to Rule 35, F.R.Cr.P. for the correction of the ten year narcotics sentence imposed by Judge Palmieri and the year and a day violation of probation sentence imposed by me upon the grounds that both sentences were illegal. Judge Palmieri denied his application in a memorandum filed on March 7, 1962 in so far as it related to the sentence imposed by him, and in a memorandum filed on March 12, 1962, I denied the motion in so far as it related to the sentence I had imposed.

The next step taken by the petitioner was the present application for writ of error coram nobis addressed to me, which seeks not only to have his conviction for violation of parole and the sentence imposed thereunder invalidated, but also to have the time served under that sentence credited against the ten year narcotics sentence imposed by Judge Palmieri.

*(1)*

Where, as here, a sentence has been fully served, the remedies provided under 28 U.S.C. § 2255 to vacate a conviction and sentence if "in violation of the Constitution or laws of the United States," are not available. Nevertheless, proceedings in the nature of coram nobis are still authorized by the all-writs section, 28 U.S.C. § 1651(a). Upon such

proceedings the case is not considered moot merely because sentence has been completed, and the court has power to vacate and set aside an illegal conviction and sentence if the proceedings are well-grounded. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). While, even on direct appeal, relief will not be afforded merely from "the moral stigma of a judgment which no longer affects legal rights," St. Pierre v. United States, 319 U.S. 41, 43, 63 S.Ct. 910, 911, 87 L.Ed. 1199 (1943), (per curiam) (alternative holding), the court will exercise its power under coram nobis where "[a]lthough the term has been served, the results of the conviction may persist." United States v. Morgan, supra, 346 U.S. at 512, 74 S.Ct. at 253, 98 L.Ed. 248. See also Griffen v. United States, 173 F.2d 909 (6 Cir. 1949) (per curiam).

In the case at bar it cannot be said that the results of the conviction of the petitioner may not still persist or, that there remains only "the moral stigma of a judgment which no longer affects legal rights." The petitioner here is still serving his ten year narcotics sentence. He claims that if his year and a day violation of probation sentence is vacated, he may be entitled to some reduction in his ten year sentence by reason of credit for time already served on an invalid sentence. Should he not succeed in obtaining such credit against his narcotics sentence, the fact that he had been required to serve an overlapping sentence found to be illegal might well be taken into consideration by the prison authorities in determining the time of his release. Without expressing any views on either of these questions, which are not within my purview, there appears to be sufficient here to indicate that the results of the conviction for violation of probation may persist and may affect substantial rights of the petitioner. Since the court has power to consider petitioner's coram nobis application, and the circumstances indicate that such power should be exercised if appropriate grounds exist, the merits of the application must be considered.

## (2)

Once a judgment of conviction has been entered, a prison sentence has been imposed and the defendant has begun the service of his term, jurisdiction of the court over the defendant and the criminal proceedings against him comes to an end except for such remedies as may be provided by the Federal Rules of Criminal Procedure, 28 U.S.C. § 2255, or the all-writs section, 28 U.S.C. § 1651(a).

However, where the defendant has been placed upon probation by the court under 18 U.S.C. § 3651, (Supp.1963), as amended, either after suspension of imposition of sentence or suspension of execution of a prison term, the situation is quite different. The defendant is placed under the supervision of the court through its probation officers to determine whether the terms of probation granted as a matter of grace are complied with, and whether his conduct during that period is such as to warrant his discharge from further supervision. If the conduct of the probationer is satisfactory, the court, at the conclusion of the probation period, "may thereupon discharge the probationer from further supervision and may terminate the proceedings against him, or may extend the probation, as shall seem advisable." 18 U.S.C. § 3653.

If the probationer does not comply with the terms and conditions of his probation § 3653 provides that "[a]t any time within the probation period, the probation officer may for cause arrest the probationer wherever found, without a warrant." The section further provides that "At any time within the probation period, or within the maximum probation period permitted by section 3651 of this title [5 years], the court for the district in which the probationer is being supervised or if he is no longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest

for violation of probation occurring during the probation period."[1]

The warrant may be executed in any district by the probation officer or the appropriate United States Marshal. It is further provided that "[a]s speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed."

With respect to violations of probation which occurred during the probation period the statute continues the authority of the court over the probationer not only during the period for which he was placed on probation but for the full five year maximum period for which probation could have been granted or, as in the case of the original statute, during the maximum term for which he could have been sentenced. (See Ftn. 1, p. 333.) "At any time" during the maximum five year period or the two year maximum term, as the case may be, a warrant of arrest for such a violation may be issued by the court. Moreover, if a warrant has been timely issued, there is no express language in the statute which places a limitation on the time within which it may be executed. All that the statute provides is that upon apprehension under a timely issued warrant the probationer shall be brought before the court "[a]s speedily as possible after arrest."

Thus, under a warrant timely issued the power of the court over the probationer may be continued beyond the five year maximum period of probation. Upon the execution of the warrant thereafter the court may still have power to revoke the probation and require service of the sentence imposed or any lesser sentence. The pertinent jurisdictional fact in such event is whether the warrant has been timely issued rather than whether the five year period has run. United States ex rel. Tomasello v. Smith, 50 F.Supp. 464 (E.D.Penn.1943). See United States v. Moore, 101 F.2d 56 (2 Cir.), cert. den., 306 U.S. 664, 59 S.Ct. 788, 83 L.Ed. 1060 (1939); cf. United States ex rel. Demarois v. Farrell, 87 F. 2d 957 (8 Cir.), cert. den., 302 U.S. 683, 58 S.Ct. 31, 82 L.Ed. 527 (1937).

The law is the same with respect to what United States ex rel. Tomasello v. Smith and United States v. Farrell held to be analogous parole statutes, which similarly impose a time limit for the issuance of a warrant by the Parole Board for the retaking of a prisoner who has violated parole. The present statute for the retaking of parole violators provides that a warrant may be issued "within the maximum term or terms for which he was sentenced." 18 U.S.C. § 4205 and predecessor statutes had similar language of time limitation. No time limit is imposed by these statutes on the arrest of a parolee after the expiration of the period limited for the issuance of a warrant if a warrant for his retaking was timely issued. If a prisoner be retaken at such a subsequent time, however, the pertinent juris-

1. At the time that Gernie was originally put on probation in 1944, the then section 725 of the Criminal Code provided that a warrant for the arrest of a probationer might issue at any time within the probation period or "[a]t any time after the probation period, but within the maximum period for which the defendant might originally have been sentenced." In the case at bar the maximum sentence for customs offenses under the former section 1598 of title 19, for which Gernie was placed on probation, was two years. In 1948, after the warrant in this case had been issued, section 3653 of the new criminal code provided that the warrant might issue "at any time within the probation period, or within five years after the expiration of the probation period." The present language of section 3653 was substituted in 1949. Since the warrant in this case was timely issued even under the original statute, which provided the shortest time limit, it is unnecessary to determine which time limit in fact governs this case.

dictional fact which authorizes the Parole Board to revoke his parole and require him to serve all or part of the remainder of the term for which he was sentenced, is the timely issuance of the warrant within the period limited by the statute. Teague v. Looney, 268 F.2d 506 (10 Cir. 1959); Adams v. Hudspeth, 121 F.2d 270 (10 Cir. 1941); United States ex rel. Jacobs v. Barc, 141 F.2d 480 (6 Cir.), cert. den., 322 U.S. 751, 64 S.Ct. 1262, 88 L.Ed. 1581 (1944); United States ex rel. Hall v. McGowan, 80 F.Supp. 792 (D. Minn.1948), aff'd, 174 F.2d 902 (8 Cir. 1949); Hamilton v. Hunter, 65 F.Supp. 319 (D.Kan.1946); Welch v. Hillis, 53 F.Supp. 456 (W.D.Okla.1944); United States ex rel. Gutterson v. Thompson, 47 F.Supp. 150 (E.D.N.Y.1942), aff'd, 135 F.2d 626 (2 Cir.) (per curiam), cert. den., 320 U.S. 755, 64 S.Ct. 62, 88 L.Ed. 450 (1943); see Taylor v. Simpson, 292 F.2d 698 (10 Cir. 1961); Sepinski v. Humphrey, 119 F.Supp. 822 (M.D.Pa. 1954). See also Clark v. Surprenant, 94 F.2d 969 (9 Cir. 1938).

The reasoning of these cases stems from Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247 (1923), and Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938).

The Anderson case held that, where a warrant for violation of parole was timely issued within the period of the violator's original sentence as prescribed by the statute then in force, and he could not be retaken until after his original sentence expired because of conviction of another crime and sentence therefor to a state penitentiary, the Parole Board retained jurisdiction to revoke his parole even though his original term had expired. The court said that the violation of parole and conviction and consequent confinement in a state penitentiary interrupted his service under his federal sentence "and was in legal effect on the same plane as an escape from the custody and control of the warden. His status and rights were analogous to those of an escaped convict." 263 U.S. at 196, 44 S.Ct. at 45, 68 L.Ed. 247. The time Corall served in the state penitentiary in ef-

fect suspended the running of the original federal term, and he could be properly retaken under a timely issued warrant and required to serve the remainder of the sentence originally imposed.

The Zerbst case involved a number of respondents paroled before completing service of terms in federal prisons. Prior to the expiration of their sentences, and while on parole, they committed second federal offenses for which they were convicted, sentenced and fully served sentences in a federal penitentiary. After the completion of the second sentences they were held in custody under Parole Board warrants alleging violation of parole. There was no question raised as to the timely issuance of such warrants. Respondents contended that when they were confined in the penitentiary under their second sentences, they also were serving the unexpired part of their original sentences. It was held that imprisonment for the second federal offenses was attributable to the second sentences only, that by their own conduct in violation of parole the respondents had forfeited the privileges granted by parole and that service under the second sentences could not be credited to the first without doing violence to the parole statutes. Since the full term of the original sentence had therefore not been completed, the authority of the Board over the respondents continued, and, after the completion of the second sentences, the Board could revoke parole and order the completion of the unexpired portion of the first sentences.

However, in none of the cases dealing with the federal probation or parole statutes that I have found was the question of unreasonable delay or lack of due diligence in the execution of a timely issued warrant raised or passed upon. In each of them either the probationer or parolee arrested under the timely issued warrant was confined in a state or federal prison upon conviction for another and unrelated crime during the period between the issuance of the warrant and his subsequent arrest under it, or was a fugitive from justice or otherwise evading

service of the warrant during that period. Thus, in each of these cases the petitioner had by his own conduct placed himself beyond the effective reach of the timely issued warrant and prevented its execution or else by confinement on conviction of another crime within the term of his parole had suspended the running of the term for which he had been originally sentenced. Under such circumstances, in the language of Judge Biggs in United States ex rel. Tomasello v. Smith, supra, 50 F.Supp. at 468:

> "It was not the intention of Congress by the statute sub judice to compel a court of the United States to enter into a race with a convicted defendant in order to execute a warrant against a time limit."

But in the case at bar none of such circumstances exist.

The warrant for the petitioner's arrest for violation of probation was issued on July 30, 1945, well within the period limited by § 3653 as presently in effect as well as the periods limited by the predecessors of that section. However, the warrant was not executed until mid-October 1956, over eleven years after it was first issued.

The undisputed facts adduced at the hearing before me show that during the entire period from the issuance of the warrant in July 1945 until petitioner's arrest on the narcotics charge in 1956 he lived continuously and openly at the same address, No. 336 E. 120th Street in the Borough of Manhattan, with his wife and children. His draft board had a record of his address there. The Probation Department had been in communication with his draft board concerning him during the probation period. He was employed as a longshoreman for most of the eleven years. During periods of unemployment he was on home relief, and such relief was afforded him by the city welfare authorities at his home address. He was arrested by the state authorities on several occasions. He still remained at this address.

Petitioner was not a fugitive from justice at any time during this period. Nor is there any evidence that he attempted to conceal his whereabouts or to evade service of any papers upon him. It is plain that a simple inquiry by the probation authorities to his draft board would have disclosed where he could be found, and that a probation officer or a United States Marshal would have had no difficulty either in locating or apprehending him.

Yet it is undisputed that during the more than eleven years elapsing between the issuance of the warrant and its execution no attempt whatsoever was made to serve him. The warrant was placed in the files of the Probation Department and remained there fallow and untouched from 1945 until petitioner was arrested on the narcotics charge in 1956. No attempts whatsoever were made to follow up on the petitioner or to locate him. The warrant was not given either to a probation officer or to a United States Marshal for execution and for all practical purposes it was forgotten until it was discovered in the probation file due to the wholly unrelated circumstances of his 1956 narcotics arrest. It may be noted that one district court has gone so far as to hold that the warrant is not issued so as to extend the jurisdiction of the Parole Board under 18 U.S.C. § 4205 and its predecessor unless it has been delivered to an officer for execution. Hyche v. Reese, 61 F.Supp. 646 (S.D. Miss.1945). But see Nave v. Bell, 180 F.2d 198 (6 Cir. 1950).

Thus, in the case at bar the facts are quite different from those in the cases which have been thus far cited. The issues presented are quite different also. The question here, unresolved by these cases, is whether jurisdiction arising from the timely issuance of a warrant can continue for eleven years despite the fact that no efforts whatsoever have been made to execute the warrant when the person against whom it was directed was readily available.

In at least two of the cases cited, Hamilton v. Hunter, supra, 65 F.Supp. at 321, and Welch v. Hillis, supra, 53 F.Supp. at 457, though circumstances such as

those in the case at bar were not present, it was recognized that a warrant for the retaking of a prisoner must be executed within a reasonable time. As was said in the Welch case "[i]t [the warrant] should be executed within a reasonable time, and what would be a reasonable time would depend upon the circumstances of the particular case." Also, in the Hall case, supra, 80 F.Supp. at 793, the court spoke of "an intimation in some of the cases that the warrant must be served within a reasonable time after its issue" and proceeded to examine the circumstances of the parolee's apprehension in the light of that intimation. Indeed, in each of the cases the emphasis on the acts or conduct of the violator which prevented prompt execution of the timely issued warrant indicates that such circumstances were the controlling factor in determining that the warrant was kept alive and that the court therefore still had jurisdiction over the violator and the proceedings against him. Compare Melton v. Taylor, 276 F.2d 913 (10 Cir. 1960), (per curiam), affirming the lower court, which had found as a fact that there was no unreasonable delay in the execution of the warrant. The implication is plain that, absent such facts tending to show that the warrant had been executed within a reasonable time under all the circumstances, it would lose its force and vitality and would no longer furnish a basis for jurisdiction.

Two cases in the federal courts involving the rights of a parolee under state law bear more directly on the question here.

In Greene v. Michigan Dep't of Corrections, 315 F.2d 546 (6 Cir. 1963), Greene, confined in the Michigan State Prison, appealed from a denial by the district court of a petition for a writ of habeas corpus against the Michigan prison authorities. Greene was arrested as a parole violator in 1959, nine years, seven months and two days after his alleged violation of parole. He was then confined in the Michigan State Prison to serve the remainder of a 2 to 15 year sentence imposed in 1947 from which he was paroled in 1949. Greene claimed that the Michigan parole authorities had not proceeded with reasonable diligence in issuing and executing the warrant for his arrest for violation of parole and therefore had waived the violation and lost jurisdiction over him.

The pleadings before the district court posed sharp issues of fact as to whether the Michigan authorities either knew or could readily have ascertained Greene's whereabouts during the lengthy period between the violation and the retaking if they had desired in good faith to charge him with parole violation. The district court did not attempt to resolve these issues and denied the writ without a hearing.

The court of appeals stated the applicable law to be as follows (315 F.2d p. 547):

"When there has been a violation of the conditions of a parole, the parole authorities, if they desire to take advantage of it, should proceed with reasonable diligence to issue and execute a warrant for the arrest of the parolee. Failure to do so may result in a waiver of the violation and loss of jurisdiction." (Citing Hamilton v. Hunter, supra; Welch v. Hillis, supra; United States ex rel. Howard v. Ragen, infra; and People ex rel. Grosso v. Addition, infra.)

The court therefore held that whether the Michigan parole officials had proceeded with reasonable diligence to issue and execute the warrant was a question of fact to be determined from all the facts and circumstances, reversed the district court on the ground that the denial of the writ without a hearing on the facts was error, and remanded the case for a determination from all the evidence whether the parole authorities had acted with reasonable dispatch.

United States ex rel. Howard v. Ragen, 59 F.Supp. 374 (N.D.Ill.1945), cited in the Greene case, involved an Illinois parole statute similar to 18 U.S.C. § 4205, which had been interpreted by the Illinois courts as permitting execution of

a warrant for parole violation at any time as long as it had been timely issued. The petitioner, a prisoner in the Illinois State Prison, sought a writ of habeas corpus, claiming that he was confined in violation of his constitutional rights under the fourteenth amendment. He had been arrested in 1944 on a warrant for violation of parole issued in 1929, more than fourteen years prior thereto. During the interim he had been thrice imprisoned for various offenses in other states. The Illinois authorities had knowledge of these imprisonments and on his release from the first two of them could have taken him into custody. However, they refrained from doing so in view of the settled policy of the Parole Board to ignore parolees as long as they stayed outside the state. That policy was changed during the prisoner's third out-of-state imprisonment, and when he was released from that imprisonment in 1944, he was arrested and brought back to Illinois to serve the unserved portion of a one to ten year sentence originally imposed in 1926, from which he had been paroled in 1929.

The district court found the claim that the power of the Parole Board over the petitioner continued for fourteen years under these circumstances to be "offensive to my sense of justice." In an opinion, the reasoning of which it must be confessed is somewhat obscure, the court concluded that under the circumstances the determination as to whether or not petitioner was to be imprisoned was at the mere "whim or caprice of the Parole Board," and that petitioner's imprisonment was in violation of his right to due process of law under the fourteenth amendment. It therefore granted the writ and ordered petitioner to be discharged. 59 F.Supp. at 378; cf. Colin v. Bannon, 337 Mich. 491, 60 N.W.2d 431 (1953); People ex rel. Grosso v. Addition, 185 Misc. 670, 59 N.Y.S.2d 357 (Sup.Ct. Westchester County 1945). People v. Valle, 7 Misc.2d 125, 164 N.Y.S.2d 67 (Ct.Spec.Sess. N.Y.City 1957).

The opinion of the Court of Appeals of the Sixth Circuit in the Greene case does not mention the constitutional infirmities in the failure of state authorities to execute a warrant for parole violation within a reasonable time or their lack of due diligence in so doing, which were indicated in the Howard case. Presumably the court in the Greene case must have considered such implications, for otherwise it could not have reversed the dismissal of the writ below and remanded the case for determination of the issues of fact as to unreasonable delay and due diligence. Plainly, if it can be correctly assumed from these cases that arrest for parole violation by state authorities after unreasonable delay and lack of due diligence constitutes lack of due process under the fourteenth amendment, such conduct by federal probation authorities would be a violation of due process under the fifth amendment also.

But I do not deem it necessary to go into that constitutional question here. The courts should interpret a statute so as to avoid serious constitutional objections. See, e. g., the classic concurring opinion of Mr. Justice Brandeis in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936). With this traditional canon of statutory construction in mind I conclude from the melange of cases on this subject that have been cited, that jurisdiction of the court over a probationer and over proceedings for probation violation under 18 U.S.C. § 3653 and its predecessors does not, as a matter of judicial interpretation, continue indefinitely merely because a warrant of arrest for violation of probation was timely issued.

The warrant extends the jurisdiction of the court beyond the otherwise applicable time limit, but it does so for the sole purpose of affording the authorities an opportunity to apprehend the probationer. Thus, unless the warrant is executed within a reasonable time under all the circumstances, it necessarily loses its force and vitality because the purpose

338

of the extension has not been served, and the court therefore loses its jurisdiction over the probationer and over the subject matter of the proceedings against him.

▮ Among the factors to be taken into account in determining whether more than a reasonable time has elapsed between the issuance of a warrant and its execution are conduct of the petitioner which might prevent or impede execution of the warrant and diligence or lack of diligence of the probation authorities in attempting to serve it.

If the law were otherwise the results would be offensive to every concept of justice and fair play. A warrant issued ex parte could be held as a sword suspended over the head of a violator indefinitely and could be executed many years later at the mere whim or caprice of the probation authorities. This could occur even were the probationer's address and whereabouts fully known to the probation authorities, or indeed a matter of record in the probation office. The probationer accused of violation would have no knowledge of the issuance of the warrant. Upon his arrest after a lapse of many years proof of innocence of the charge of violation might well be unavailable to him. No matter how minor the charge on which the alleged violator was originally imprisoned or no matter how minor the alleged violation, the warrant could be kept alive virtually for the life of the probationer by the mere inaction of those charged with the duty of enforcing the law.

While it is no doubt true as Judge Biggs said in the Smith case that Congress did not intend by the statute to compel a United States court to enter into a race with a convicted defendant to execute a warrant against a time limit, it seems equally clear that Congress could not have intended a warrant to lie fallow indefinitely and to be executed at any time in the future when it suited the probation authorities to do so. It could not have intended what might be in effect a lifetime probation. Some bounds must be set on the time within which the warrant must be executed, and such bounds are exceeded where under all the facts and circumstances execution was unreasonably delayed.

A reasonable time limitation is particularly appropriate where probation is concerned. Probation, unlike parole, is an arm of the court itself. Probation officers are appointed within the jurisdiction and under the discretion of the court. They operate under the court's supervision and direction. It is the court which has the ultimate responsibility for supervision of the probationer through its probation officers. As said in Frad v. Kelly, 302 U.S. 312, 318, 58 S.Ct. 188, 192, 82 L.Ed. 282 (1937):

> "Probation is a system of tutelage under the supervision and control of the court which has jurisdiction over the convicted defendant, has the record of his conviction and sentence, the records and reports as to his compliance with the conditions of his probation, and the aid of the local probation officer, under whose supervision the defendant is placed."

The court must be vigilant to insure that just and fair bounds are set for the exercise of its authority over probationers. It should not countenance unreasonable extension of its supervisory powers in the face of inaction or lack of diligence of its own officers.

▮ Applying these standards to the undisputed facts in the case at bar, it is plain to me that as a matter of law the delay of over eleven years in serving the warrant for violation of probation here was unreasonable. While the lapse of time is not decisive, it is plainly a factor to be taken into account. When it is considered that no efforts whatsoever were made to execute the warrant at any time during the entire eleven year period, and that the probationer could readily have been located and apprehended at any time during the period by the exercise of reasonable diligence, the conclu-

sion is inevitable that the delay was unreasonable under the circumstances.[2]

Because of the unreasonable delay in executing the warrant it had lost all force and effect and was no longer a live and valid process under which the petitioner could be legally apprehended and brought before the court. The petitioner's maximum sentence and the maximum five year probation period had long since expired at the time the warrant was executed. The jurisdiction of the court over the petitioner and over the proceedings against him was wholly dependent on the issuance of a warrant within the period of time limited by 18 U.S.C. § 3653 and the continuance of such warrant in force and effect. Since the warrant was no longer in force and effect and had lost its validity, the foundation stone for jurisdiction over the probationer in the proceedings had been removed. The court therefore had no jurisdiction of the subject matter before it and no power to try and convict the petitioner for violation of probation and sentence him therefor. Thus, the conviction and the sentence were illegal and void.

 It is urged, however, that the petitioner, represented as he was by competent counsel, failed to raise objection to lack of jurisdiction at the hearing before me and therefore waived his right to do so by collateral attack on judgment and sentence at this late date. It is true that no such objection was raised at the hearing, and, indeed, there was no reference to the question of jurisdiction at all. But the jurisdictional objection presented here does not go merely to in personam jurisdiction over the petitioner, which can be waived by failure to raise it. Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793 (1927); United States v. Rosenberg, 195 F.2d 583, 602–603 (2 Cir.), cert. den., 344 U.S. 838 (1952); Chapman v. Scott, 10 F.2d 156, 159 (D.Conn.1925), (alterna-

tive holding), aff'd, 10 F.2d 690 (2 Cir.), cert. den., 270 U.S. 657, 46 S.Ct. 354, 70 L.Ed. 784 (1926). It is well settled that in a criminal proceeding lack of subject matter jurisdiction—that is to say, that the court has no jurisdiction over the offense charged—cannot be waived and may be raised at any time by collateral attack through the appropriate remedy. See Glidden Co. v. Zdanok, 370 U.S. 530, 535–537, 82 S.Ct. 1459, 8 L.Ed. 2d 671 (1962) (Opinion of Harlan, J.); Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455 (1939); United States v. Allocco, 305 F.2d 704 (2 Cir. 1962), cert. den., 371 U.S. 964, 83 S.Ct. 545, 9 L.Ed.2d 511 (1963); Markham v. United States, 215 F.2d 56, 57 (4 Cir. 1954) (dictum), cert. den., 348 U.S. 939, 75 S.Ct. 360, 99 L.Ed. 735 (1955); Pon v. United States, 168 F.2d 373, 374 (1 Cir. 1948) (dictum); Chapman v. Scott, supra, 10 F.2d at 159 (dictum).

 Here the absence of jurisdiction appeared from the undisputed facts in the record. While such facts were never posed to me in that context, and the question was never raised, nevertheless, the charge against the petitioner should have been dismissed sua sponte for want of jurisdiction to try him therefor. Since such jurisdiction was lacking, the judgment of conviction and the sentence may now be collaterally attacked, and under the circumstances here coram nobis is the appropriate remedy. (See supra, pp. 331 to 332).

I hold, therefore, that the conviction and sentence for violation of probation in October of 1956 was wholly void for want of jurisdiction to try the petitioner, and that such conviction and sentence must be expunged from the record.

One further and important question remains. As I stated at the outset, in addition to vacating and expunging from the record his conviction and sentence for violation of probation, the petitioner

---

2. I am aware of the fact that in 1944 and subsequent years there was a serious shortage of personnel in the probation office of this court, and that the office was heavily overburdened. What happened in this case is understandable from the · viewpoint of the probation department though not legally excusable as far as the Government was concerned.

seeks to have credited against the ten year sentence for narcotics violation imposed by Judge Palmieri all or part of the time which he served under the violation of probation sentence now held to have been illegal and void.

This is a matter peculiarly within the knowledge and competence of Judge Palmieri as the sentencing judge. I am not qualified to pass on the question, nor would it be proper or appropriate for me to do so. The portion of petitioner's application which seeks to have time served under his sentence for violation of probation credited against his ten year narcotics sentence is respectfully referred to Judge Palmieri. So that there shall be no doubt about the matter, it should be said that in so doing I am not directly or by implication attempting to pass on any phase of this portion of the application, including the suitability of the remedy or the power to grant relief, if relief should be deemed appropriate.

It is so ordered.